## A. F. C. CRAMER

v.

## JOSEPH GREGG ET AL.

*Sales—Grain in Bulk—Quality of—Evidence—Portion of Letter—Collusion—Agency.*

1. It is proper to admit in evidence a portion of a letter, containing statements against the interest of the writer, he having at hand a letter press copy of the whole of said letter, the person to whom it was addressed, being his agent in a given transaction.

2. A charge of collusion between parties named, can not affect an admission by another.

[Opinion filed May 5, 1891.]

IN ERROR to the Superior Court of Cook County; the Hon. KIRK HAWES, Judge, presiding.

Messrs. ALLAN C. STORY and F. W. STORY, for plaintiff in error.

Messrs. FLOWER, SMITH & MUSGRAVE, for defendants in error.

GARY, J.   This is assumpsit by the defendants in error against the plaintiff in error and John C. Blohme, commenced by attachment, with service upon and appearance by the plaintiff in error only.

Gregg & Co. were grain dealers in Chicago, and Cramer & Blohme were in the same business in Charleston, South Carolina.   Through the firm of Kracke & Jansen, brokers in Charleston, Gregg & Co., in August and September, 1886, contracted to sell to Cramer & Blohme two separate lots, each ten carloads of oats.   The evidence put in by Cramer tends to show that the sales were by sample, then in the possession of Kracke & Jansen, sent to them by Gregg & Co., of what in that evidence are called " choice red rust proof oats."

From September 22d to October 10th, the oats were shipped, and October 16th Kracke & Jansen telegraphed Gregg & Co., "Cramer rejects oats; too many black grains."

There was evidence on the part of Cramer that the sample was free from any foreign substance, and that the oats that came " were badly mixed with black grains;" "with black and other grains;" "with other seeds and like grain."

Gregg & Co. put in a good deal of evidence of the superior quality of the oats when shipped, and also evidence that the oats after arrival in Charleston were of that quality, and their argument is, that the market price of oats having declined in Charleston, the rejection of the oats was really for that reason, and the objection to the quality a mere pretense.

In this state of the case it was material to Cramer to fortify his position that the rejection was in good faith, because of the quality, by every means in his power.   He offered two pages of a letter from Gregg & Co. to Kracke & Jansen, dated September 24, 1886, which were not the whole letter, the residue not being produced, nor any explanation of why it was not produced given, containing, among much other matter having no reference to that in controversy, this language: "In several of Cramer & Blohme's cars there are some black weed hulls, mixed with the oats, which at first glance lead one to

suppose that they contain a good many black oats, while they contain very few.    We give you this information to use in case of complaint, and inclose you a few of the hulls." The court refused to permit this to go in, over the objection of Gregg & Co. that the letter was not complete, and Cramer excepted.

If admissible, the importance of this letter to Cramer was very great.

It admitted that there were some black oats, and something else that might be mistaken for a good many black oats, in the cars shipped.

If Cramer & Blohme were entitled to "choice red rust proof oats," free from any foreign substance, whether the mixture was of black weed hulls or black oats, they were justified in rejecting the lot.    No authority is cited by counsel on either side, on the point whether the refusal to admit the letter was right or wrong.    The fact that Gregg & Co. kept letter press copies of their correspondence was already in proof by them.    The sentences quoted were preceded and followed in the letter by other matter.    Nothing indicated that the part not produced could have qualified the statement about the oats.    If it would, Gregg & Co. could easily have produced it from their copy.    If the circumstances could have raised any suspicion that Cramer wilfully suppressed the part not produced, the refusal to admit the part produced would have been proper; but he was a thousand miles away, and any attempt to obtain an advantage by a suppression could be instantly met and turned against him, by the letter press copy in the possession of Gregg & Co.    From the record it seems that each page of the letter was an independent sheet, and there was no spoliation or mutilation; the absent sheet would seem to be no more necessary to an understanding of the statement quoted than one page of an almanac to explain the calendar on another.    If the whole letter had been on one page, Cramer would have put in only the part quoted.    Heinsen v. Lamb, 117 Ill. 549.    Gregg & Co. could have put in the residue, if they chose, and they had the means easily to do that, if for their interest, as the case stood.    1 Greenleaf on Evidence, Sec. 201, note.

Doubtless cases in point might be found, but without the aid of counsel we will spend no more time in looking for them, and adopt the rule of common sense, that the portion of the letter produced was admissible.    The rejection of this letter was especially damaging to Cramer.

Gregg & Co. have recovered substantial damages for the refusal of Cramer & Blohme to accept and pay for the oats.

In the brief here, which we may reasonably infer to some extent reflects the argument below, collusion between Cramer & Blohme and Kracke & Jansen, is charged.    Such a charge, if believed, strongly tended to destroy their credibility as witnesses.    But no such charge could affect the admission by Gregg & Co.

The judgment is reversed and the cause remanded.

*Reversed and remanded.*